I'll call the next case, Georgelas versus Desert Hill Ventures, case number 21-4036. Thank you, Your Honor. May it please the court, Stephen Christensen for the appellants David Hill and Desert Hill Ventures, Inc. I'm going to try to reserve three minutes for rebuttal and I'll keep track of that time. That issue here is the reasonably equivalent value defense in Utah's Uniform Fraudulent Transfer Act. The district court ordered the appellants to disgorge salary they received for administrative work they actually performed and to reimburse monies paid to third-party contractors for home remodeling intended to benefit another third-party, Mrs. Hill, who was not there. Who was ordered to do that reimbursement? Was it Hill or was it the contractors? Mr. Hill. So the contractors got the money. They weren't ever going to have to give it back. Hill was going to have to come up with new money to give it back. Exactly, Your Honor. The district court made these determinations on summary judgment. Let me address each of these two rulings and I'll start with the salary issue. This case is one of a kind with respect to the salary disgorgement order here. No reported decision requires the return of bona fide salary for administrative employment services rendered under these circumstances. The Hill appellants worked in good faith for this salary. They actually provided services. They knew nothing of the fraud. Their services consisted purely of internal ministerial secretarial type work. And there's no contention. The contract was not a fair market rate. Under these circumstances, courts everywhere conclude that reasonably equivalent value has been given under the UFTA. If we were to grant you the relief of dismissing the vacating the summary judgment, this case would still be remanded, would it not, for the district court to make a factual decision at that point about the bona fides and good faith of all these parties, David Hill and everybody else? Would it not? I think so, Your Honor. It's not entirely clear because some of these issues were conceded, but I think they were probably conceded for summary judgment purposes. There was never any stipulation that he acted in good faith, period. It's simply they said, well, for this jurisdictional issue, we're going to proceed with fighting one issue and not all of them. That's exactly right. The district court in this case erroneously relied on a line of cases that created a common law exception to statutory value as defined by the UFTA. What we've called in our briefs the referral fee exception under this judicially created exception, some cases have concluded there's no value given when a person receives compensation in exchange for working to recruit others into a fraudulent scheme. We ask the court to reject the application of any such exception here for two reasons. First, it doesn't apply to our undisputed facts. We don't have any evidence in this case of the Hill appellants working to recruit others into a fraudulent scheme. So even if such an exception were recognized in this circuit, it wouldn't apply on this record. The undisputed evidence, and we've laid this out in the briefing and it was in Mr. Hill's affidavit, is that the Hill appellants performed administrative and ministerial secretarial type work on behalf of the businesses for existing investors. And to the extent that the district court suggested in its ruling that those tasks helped to entice new investors into the scheme, that's an improper conclusion drawn from the evidence of what was actually done. There's simply no evidence that the Hill appellants did anything to entice new investors into the scheme. There's no evidence, period, that any new investor said, I'd like to look at the books or I'd like to look at the audited financials to see what kind of money is involved? There's no evidence that was submitted by the receiver on summary judgment. That's correct. The evidence stood or fell on Mr. Hill's affidavit, which outlined the facts of the services that he performed. And second, there's a split of authority among courts whether such an exception as this would even exist at all in this circuit. Let me start that sentence over. There's a split of authority among courts whether such an exception would apply at all, even to referral fee situations. We've briefed that extensively and we urge this court to hold that it would not. Such an exception is at odds with the plain language of the UFTA and the better reason decisions have rejected it. The statute asks whether reasonably equivalent value was exchanged. And this court and many others have interpreted that to ask, was the value of the transfer or preserved by the transfer? Or did the transfer simply diminish in value as a result of the transfer? Here, the Hill appellants perform legitimate work by providing actual services on a daily basis over many years. And there's no question about whether the work was performed or about whether the amount charged for the work was market value or at arm's length. So the Hill appellants became creditors of the Bliss parties upon performing the work. And by paying them, the Bliss party satisfied an antecedent debt, which meets the definition of value under the UFTA, thus preserving the value of the enterprise under this court's analysis. So you're arguing that we do not, when we look at paying an antecedent debt for purposes of a preference, we do not look at the validity of that under the antecedent debt. Is that correct? That's right. Certainly not this type. But what if the antecedent debt was just a totally fraudulent note put into the file to protect against this very kind of bankruptcy concern? Then the UFTA deals with that by also requiring that it be in good faith. So we do look at the underlying debt, at least as to good faith. Originally you said, no, we don't look at the underlying debt validity at all. Now you're saying, oh, well, we do look at it through good faith. Good faith was conceded in our case. I'm not talking about this. I'm talking about the law. Yes. I mean, at various points, you made a fairly categorical statement that we do not look at or concern ourselves with the validity of the underlying debt. You're saying we do look at it for good faith, but not for legal validity? Or are you saying we don't look at it at all, even for bad faith? What are you saying? The statute requires that for the defense to apply, that the transfer be taken in good faith and for reasonably equivalent value. You analyze what you're asking your honor under the good faith analysis. So, yes, you do look to see if someone is fraudulently involved in the scheme, then they're not taking that transfer in good faith. In our case, good faith has been conceded. And so the only question is reasonably equivalent value and equally equivalent value. You do not look at the good faith that's already taken care of under the separate. It's not an issue. It's just that in this particular case as presented to us, it's not an issue. That's exactly right. And I would say we could boil it down even further because reasonably equivalent value. I don't really think that there is a dispute at all about reasonably equivalent because of the fair market nature of the services that was conceded. It really comes down to value. Does it mean was value given here? And the receiver would say there was no value given. But the receiver's position is an island in a sea of cases. All the cases that involve our situation find that value was given when when someone comes in and performs ordinary everyday ministerial acts. And that makes sense, as we pointed out in the briefs. Otherwise, you have a situation where the Enron's of the world, you have twenty nine thousand employees. Most of who didn't know anything that was going on about the fraud would have to go back and discharge five, 10 years of salary because the people at the top of the the the company were running a fraudulent scheme. And that's not how the UFDA works. And that's not how it should work. This was not an illegal contract that the court would not enforce. It was an ordinary employment contract. It was not a situation, as the receiver suggests, where the services were performed for the individual as opposed to his companies. The district court concluded in its ruling on page four that the hill towns were hired to perform services for the enterprise, which was the finding through the companies and the receiver did not appeal that conclusion. The receiver here takes the position that the services council. Are you planning to get to the other the two right now? I think I'll go for that right now. I've made my points on the first one. You're on it. I just want to make sure that you I do have some questions on that. So very good. The statute calls for disgorgement from those who money was paid or for whose benefit it was paid. The undisputed evidence presented on summary judgment, which consisted, again, of Mr. Hill's affidavit was that the monies were paid to third party contractors solely for Mrs. Hill for the placement of ramps and other wheelchair accessible construction. He did not receive the funds. He did not receive the benefit of the funds. Why can't we make the inference of the benefit, which is what I think the district court did here, the inference of the benefit from the fact that he is taking care of the children. He's providing care for his wife. He's working from home, which he was permitted to do. And that these the the his wife's ability to have wheelchair accessibility in his home would certainly have benefited him as well. Because there are other adverse inferences. At least that's the way I understand the argument. Because there are other inferences that can be drawn, Your Honor. We're here on summary judgment. And so that might be a great argument on at a trial. But we can draw reasonable inferences. That's all it has to be. Right. But that would have seemed like a reasonable inference. That would have to be the only reasonable inference that could be drawn. There was no evidence presented that the construction increased the value of the house. And I don't know if this came across in the briefs or not. This that's not what the kind of value I'm talking about here. That's a different issue. The value of the house. It sounds like there isn't any in any record information on that. The value of the house and whether that would have benefited him as a as a co-owner. I'm talking now about just this more intangential benefit that he would have received from. Renovations. His affidavit says that it was his employment arrangement that allowed him to work from home, not the construction. He started working from home three years before his wife contracted the illness. And in fact, the payments were made to the contractors and construction wasn't done until a bare two months before the SEC came in and sued him. So we don't have this long history of, well, he could work from home because of these construction facts. In fact, there was there was nothing to monetize this intangible benefit. There's simply an argument from the receiver. Oh, well, he must have benefited. There's not even direct evidence on on that point. And as we pointed out in our briefs, you've got a very slippery slope here. You could sue, I suppose, children who lived in the home. You could sue an in-home caregiver and say, well, her or his life was made easier because they were there giving care. But there isn't any evidence. I don't think this appears in the record. But but Mrs. Hill moved around in a wheelchair that was electric that she moved herself. And so to the extent that who would be sued with the car, I'm still a little confused about this with it. Would the contractors have to do the reimbursement because the money was paid directly to them? Or would it only be Mr. Hill, like you said earlier, that would have to come out of his pocket new money to do that reimbursement? Are the contractors at risk of losing the payments they've received? I think it's travesty that anyone would be sued under these circumstances, but if there's anyone to be sued, it would be Mrs. Hill. No question. In this case, in this case is the money sought from the contractors. It is not. No, no. And and the contractors would have, I think, a good faith, reasonably equivalent value defense because they actually provided the goods and services. So even if Mr. Hill had to pay back that money. The contractors aren't losing the money unless he'll brings a separate claim now against the contractors. I'm sorry, the question is decided. You talked about, well, all these people would have to pay back money that caregivers and the people of the taking care of the children and all that. And I'm just trying to see if that is a bugaboo or a real problem. My question is, in this case, are the contractors at risk of having to discourage their money? It was paid to them directly by Bliss Enterprises. And if so, they're not defendants in this case. Would that require a new suit by Hill to get reimbursement for money he has to pay to the enterprise? I think I think not. I think in the case of the contractors, they were paid for services actually provided. I think they're going to have a good faith, reasonable equivalent defense. They got that money directly from the Bliss Enterprise, not from David Hill. That's right. And my point for Judge Moritz was this. Judge Moritz is asking if Mr. Hill indisputably received. My time is up. May I finish answering this? Yes. If Mr. Hill indisputably received a benefit from the from the payment of these monies to the third party contractors. And my point was, number one, there's not only one indisputable factual inference that can be drawn here. But my second point is, if Mr. Hill received that, then that would extend this intangible benefit would be extended to anyone whose life was made a little easier when they were dealing with Mrs. Hill because they were involved in giving care. So if you had a home care nurse who was there full time, you could make the same argument. You could say, well, because she didn't have to help or he didn't have to help with the the wheelchair. Again, you've got to really stretch because of all this isn't in any affidavit or evidence. But if their life is made easier, they're the party that received the benefit. And so they should be the ones that have to reimburse the Bliss Enterprise. And so that's part of the record. Thank you. Thank you, Your Honor. Thank you. Good morning, Your Honor. My name is Julie Blanche. I am acting on behalf of Tammy Georgilis as receiver for the Bliss and Bliss Enterprises. The first issue on appeal is whether a Ponzi scheme employee who has received Ponzi funds and who undisputedly acts in furtherance of the Ponzi scheme by maintaining investor competence, as is shown in the record, and by enticing new investors through the particular services he provides into the scheme, whether that provides reasonably equivalent value. So what's the what's the evidence of any enticement in the record? The evidence is found in volume two of the appendix, pages 317 through 321 and 336 through 340. Those are two affidavits from two investors. One is Darren Gilson. One is a Mr. Thatcher. The affidavits are similar in what they say. They say the following. First, I spoke to Roger Bliss. He sounded convincing. He was alluring. That is what first drew them in or at least got their foot in the door. But here's what made them stay in the house. They go further and say he provided me with an agreement that I would be indemnified if I lost any money. And both of these gentlemen say that was a big hook for me to go into the scheme or to invest into the Bliss Club. As we know from the record, Mr. Hill says that he was the one who made those investor agreements. He doesn't speak to the investors, does he? Or make claims about how great the investments are. He does. I mean, that's what I'm looking for. He provides a paper agreement for them to sign. Right. That's one of the many things he does. He speaks to them in two different ways. He speaks to them through the website he creates. The website exists for marketing and to keep the investors interested. Is he speaking? I'm so sorry, but is he making those statements? Isn't this Bliss that's making the statements, not Mr. Hill? No, no, no. Mr. Hill is the one who makes and creates the website. But Mr. Hill also talks directly to the investors in at least two ways. If an investor wants to withdraw a fund, they go through Mr. Hill for that. If they have any questions, including financial questions of Mr. Bliss, they have to go through Mr. Hill for that. And this is not a Ponzi scheme where you have a web of 100 employees, all of whom are performing some or all or some of the tasks that Mr. Hill admits that he performed. This is just one person who is essentially a right hand man. And he's the one who's keeping the scheme humming, not only by writing those investor agreements that contain an indemnification agreement. That is a big lure for these potential investors. But by creating the website, which exists for marketing purposes, but it also exists because these two gentlemen in their affidavit say, I stayed in the scheme because I went on to the website. I looked at how it was falsely saying to me that my returns were better than they actually were. And that was the reason that I stayed in the scheme because the services he provides as a whole. If you look at them taken as a whole, it's evident that it's the main assistant to Mr. Bliss. Mr. Bliss is the one with the shine, but and he's the one who gets them in the door. But the reason they they stay in the house and the reason that they keep investing and sinking more of their money into the scheme is approximately caused by the activities and the services rendered. That's not our test, is it? That's not how we were talking about whether he acted in good faith, which may be what you're talking about. But I didn't really I thought we were more concerned in this appeal with only whether there was a reasonably equivalent value. Right. And the reasonably equivalent value test is determined by the degree to which the net worth of the Ponzi scheme is preserved. I mean, I guess I don't see that in the statute. Why wouldn't we do? Why wouldn't we look for the definition of value, which we can find in twenty five six dash four one and decide what what value means? You're you're basically trying to work the good faith argument into the reasonably equivalent value argument, aren't you? I mean, you're kind of combining it or all collapsing it all into one. No, both parties agree on appeal that the test for measuring reasonably equivalent value in this context, once a Ponzi scheme has been established and the transfers are presumed fraudulent. Both parties agree on appeal and they cite this test in their appellate briefs that the test is the degree to which the net worth of the Ponzi scheme is preserved by the services. And in this case, talking about Klein versus Cornelius now, that would be one of the cases. It would also be the Warfield versus Byron case. And is there any case law that that tells us we can define reasonably equivalent value, which is really what this is all about? I think in terms of that, that standard, the. Yes, I'm not connecting the dots here to this particular statute. Yes, it would be the Warfield versus Byron case, which is the circuit case out of from 2006. And when both parties discuss this standard, as they agree, it's the legal standard. What does that case say? What is the Warfield case say? That it is the degree to which the net worth is preserved is the standard that one looks at in this particular context where you have a Ponzi scheme that's been established and it then becomes a situation where the transfers are presumed to be fraudulent. Did that court consider how that all works in connection with the with the very explicit language of twenty five, six, nine, one, which is reasonably equivalent value? He got the payments for reasonably equivalent value. That court did. That court did, in fact, look at the Uniform Fraudulent Transfer Act in that particular provision. And one of the things the court said there is it takes cheek, I think, meaning the English term of it's cheeky. It takes cheek to contend that when you lure investors into a scheme and you're the one who's responsible or one of the people responsible for keeping that that scheme humming, that you're actually benefiting the scheme by extending. What was the participation in the in that case? I cannot remember salary. Was it a salaried assistant, which is what we're talking about here, because I don't see any authority like this. No, to my memory, it was not a salaried employee in that case, but that. As Mr. Hill states in his appellant brief, one of the categories of transferees that the courts end up looking at do include employees who end up providing services like Mr. Hill was who provide services to the Ponzi scheme. And that's one of the categories that the court is asked to look at here. And because we're being asked to to decide whether to apply Wakefield to the 10th Circuit or not, Wakefield is a judicial exception to the statutes. You don't see the exception in the statute language. So we basically look away. We can we are not like we were bound by statutory language. We're not bound by the language of Wakefield. We get applied part of it or all of it. So it's not necessary that we're not bound either by saying anything that assists in keeping that Ponzi scheme going is not going to be is money that can be recovered. We could say Wakefield will apply Wakefield, but only to the extent of direct solicitations. Or you could say we could say we agree with you, Ms. Blanche, that it applies not only to direct solicitations, but anything that directly relates to retention of Ponzi schemes. I mean, this is all Wakefield is just a policy case, strict policy. So we could just decide how far we want to make an exception to these these retention rules or not. There are two things that I would say to that, Your Honor. The first is, if we focus on the definition of value in the statute, one of the things that's required for what one might call a very strict reading is whether the salary paid was proportionate to those paid in the industry. There's no evidence in the record that what Mr. Hill paid was a reasonable rate. And it is his burden to show that what he was paid for his services was a reasonable amount. So if this court were to go away from Wing v. Dockstader, which is a 10th Circuit case of 2012, which cited favorably to the Fifth Circuit Warfield case, if this court were to go away from that and say we really just want to focus on what we believe is a strict reading of the statute of value, then there's no evidence that Mr. Hill provided for the district court or this court to say that the salary that he was paid was proportionate to those in the industry. Did he get an exorbitant rate or was he paid reasonably? It's his burden to prove it. He had no evidence. I'll switch then to the second issue on appeal, which is the for whose benefit the transfer was made issue. This has to do with the home renovations. One way we can distinguish the nurse at home sliding scale slippery slope bevy of examples that Mr. Hill gives is the following. Mr. Hill was one of the owners of the home he approved of. He consented to that construction being done. His home was also his office. He essentially lived there 24-7. And a way that you can distinguish it from the in-home nurse situation is he's actually the owner of the house. Another way to distinguish it is... There isn't anything in the record as far as the value of the home, right? That's correct. That was one of the basis I think the district court cited, but I don't see anything in the record on that. That's correct. There's nothing in the record on the value of the home. But as we all know with home renovations, you benefit from it for sure. But if it's making it disabled effective, that may only benefit other people that might want to use it if they're disabled. And in fact, it could be a turnoff for people that don't have disabilities. The renovations that were provided under the evidence that's shown in the record are that doorways were widened, lips between rooms were smoothed out, and it indisputably made it easier for Mr. Hill, who's caring every day for his disabled wife. Made it easier on him to care for his wife. She certainly benefited, but he benefited too, because he had to take away less time from his workday and from his life in general. Can I ask a question about the record. There is a reference with no record support that validates it, that Mrs. Hill had some kind of a relationship with bliss either a relative or a, or, or something that there was some reason he might have wanted to benefit her because of a prior. Or maybe existing, they may be related in some way. Is there anything in the record to support that or was that just a totally unsupported statement in the briefs. Well, I don't know what you're referring to your honor, there is no evidence in the record that they were related. And in fact, kills employment status is the reason that these home renovations were done. If he hadn't been an employee of the bliss enterprise. Mr bliss. For all we know didn't know of Mrs. Hill and her existence and her issue with Alzheimer's. So it's the employment status where Mr. Hill is tied to the bliss enterprise that enticed Mr. Bliss to provide these home renovations as a charitable donation. So while it's clear that Miss Hill benefited from these improvements, the person who lived in the house with her 24 seven, who was her main caregiver, who had many things on his plate, including caring for her caring for the children doing his work from put that in the record so easily. He could have simply added to his affidavit these renovations gave me more time to work for the bliss enterprise because I didn't have to take so much time to take care of my wife. But he didn't do that. I mean, we have to deal not with a hypothetical record that we all think easily could have been fixed. We have to deal with an actual record and there is zero statements in the actual record that he benefited and he could have said so with one sentence and didn't. So we're not gonna, we're not in the business of correcting an error of factual record that he could have done himself. But you may draw reasonable inferences from the record and the record does have inferences in it that allow one to say that, look, if you're the owner of a home and home improvements are done where you're living, you're one of the, you live there, you benefit from it. So, while the lack of a self serving statement in the record is not surprising. Fortunately, there are there is enough on the record for reasonable inferences for the district court and for this court to draw that Mr help personally benefited. I see that my time is up. Are there any other questions. Doesn't that we asked this court, we asked that this quarter from the grant of summary judgment. Thank you. Thanks to both counsel, we appreciate your arguments they've been very helpful, and a case will be submitted and counselor excused. Thank you.